**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAKSHIT GUMMARAJU, <br><br> *Plaintiff*, <br><br> v. <br><br> MARKWAYNE MULLIN, Secretary of Homeland Security,[1] *et al.*, <br><br> *Defendants*. | Civil Action No. 25‑3714 (SLS) <br> Judge Sparkle L. Sooknanan |

**<u>MEMORANDUM OPINION</u>**

Rakshit Gummaraju is a mechanical engineer with special expertise in designing safety measures for battery-powered electric vehicles. In 2024, Mr. Gummaraju filed a petition seeking an EB-2 immigrant visa—a type of visa available to highly skilled foreign nationals ultimately seeking lawful permanent residence in the United States. The U.S. Citizenship and Immigration Services (USCIS) denied Mr. Gummaraju's petition. He filed this lawsuit to challenge that decision. The Defendants now move to either dismiss Mr. Gummaraju's lawsuit for improper venue or transfer it to the Eastern District of Michigan or the District of Nebraska. If the Court declines to dismiss, the Defendants seek an extension of time to respond to the Complaint following resolution of the transfer motion. Because venue is more appropriately located in the Eastern District of Michigan, the Court grants the motion to transfer. Out of deference to the transferee court, the Court denies the motion for an extension without prejudice.

---

[1] The current Secretary is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

**BACKGROUND**

A.    **Statutory Background**

The Immigration and Nationality Act provides that a certain number of visas—known as

EB-2 visas—must be made available to foreign nationals

> who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

8 U.S.C. § 1153(b)(2)(A). "The process for obtaining an EB-2 visa generally begins when a

prospective employer in the United States files an I-140 Immigrant Petition with USCIS on behalf

of the foreign national." *Aghakasiri v. Bondi*, No. 24-cv-2898, 2026 WL 772711, at *1 (D.D.C.

Mar. 19, 2026) (citing 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(k)(1)). "The petition serves to

demonstrate that the prospective employer wishes to hire the foreign national and has obtained the

appropriate certification from the U.S. Department of Labor to do so." *Id.* (citing 8 C.F.R.

§ 204.5(k)(4)). But the job-offer and labor-certification requirements may be waived when it is in

the "national interest." 8 U.S.C. § 1153(b)(2)(B)(i)). "A foreign national who believes that he

qualifies for such a national-interest waiver may file the I-140 Petition himself and request the

waiver." *Aghakasiri*, 2026 WL 772711, at *1 (citing 8 C.F.R. § 204.5(k)(1)).

In determining if a "national interest waiver" should be granted, USCIS applies legal

standards set forth in *Matter of Dhanasar*, 26 I&N Dec. 884 (AAO 2016), a decision by the USCIS

Administrative Appeals Office. That decision provides that

> USCIS may grant a national interest waiver if the petitioner demonstrates by a preponderance of the evidence: (1) that the foreign national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification.

*Id.* at 889 (footnote omitted).

### B.    Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023); *see also Aishat v. DHS*, 288 F. Supp. 3d 261, 264 (D.D.C. 2018) (assuming facts in complaint to be true for purposes of resolving motion to dismiss under Federal Rule of Procedure 12(b)(6) and motion to transfer under 28 U.S.C. § 1404(a)).

Mr. Gummaraju "is a mechanical engineer with expertise in designing and developing automotive safety measures" for battery-powered electric vehicles (EVs). Compl. ¶ 21, ECF No. 1. He has a Master's degree in Mechanical Engineering from Wayne State University, and has more than "eight years of experience in the field of automobile crash and safety restraint engineering," including "specialized knowledge of his field" as it relates to EVs. Compl. ¶ 22, 32. When he filed the petition at issue, Mr. Gummaraju was working for LandX Motors, an EV startup company in Farmington Hills, Michigan, where he supported development of "an electric battery truck designed specifically for the U.S. Army." Compl. ¶ 22.

Mr. Gummaraju, a citizen of India, currently resides in Troy, Michigan. Compl. 1, ¶ 1. On November 15, 2024, he filed an I-140 Petition "requesting approval of an EB-2 immigrant visa classification based on a national interest waiver." Compl. ¶ 23. Mr. Gummaraju's proposed endeavor was "to design and develop safety restraint systems for Battery EVs." Compl. ¶ 24. In support of his Petition, he presented evidence that his expertise in mechanical engineering and his proposed endeavor "have applications in the advancement of energy storage, energy-efficiency technologies, and electric and hybrid Engines, which are formally recognized as critical and emerging technologies by the National Science and Technology Council." *Id*.

3

On March 17, 2025, the USCIS Service Center in Lincoln, Nebraska requested additional evidence from Mr. Gummaraju establishing: "(1) that [his] proposed endeavor has national importance, (2) that he is well-positioned to advance the proposed endeavor, and (3) that on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification." Compl. ¶ 25; *see also id.*, Ex. 2 (Request for Evidence), ECF No. 1-2 at 9–16.

In response, on April 3, 2025, Mr. Gummaraju submitted additional evidence and legal arguments in support of his Petition. Compl. ¶ 26. This included evidence: (1) that increasing domestic automobile manufacturing was a priority of both the prior and current presidential administrations; (2) that Mr. Gummaraju had substantial expertise and experience working in the automative safety engineering field; and (3) that it would be beneficial to waive the job-offer and labor-certification requirements because those requirements were impractical for "individuals at the cutting edge of electric vehicle technology" who were employed by startups with less stable funding (like Mr. Gummaraju's employer LandX Motors). Compl. ¶¶ 26–33.

On May 21, 2025, USCIS denied Mr. Gummaraju's I-140 Petition. Compl. ¶ 34. USCIS did not question that Mr. Gummaraju's proposed endeavor had substantial merit or that Mr. Gummaraju was well-positioned to advance it. Compl. ¶ 35; *see also id.*, Ex. 1 (Denial Notice), ECF No. 1-2 at 1–7. Rather, USCIS found that Mr. Gummaraju had not sufficiently demonstrated that: (1) his proposed endeavor was of "national importance," or that (2) "it would be beneficial to the U.S. to waive the requirements of a job offer and thus of a labor certification." Compl. ¶¶ 35–37. The Denial Notice, like the Request for Evidence, was issued by the USCIS Service Center in Lincoln, Nebraska. Denial Notice at 1.

### C.    Procedural Background

Mr. Gummaraju filed this lawsuit on October 20, 2025, against the Secretary of Homeland Security, the Director of USCIS, and the Deputy Associate Director of Adjudications for USCIS. Compl. ¶¶ 11–13. Mr. Gummaraju's Complaint includes a single claim that USCIS's denial of his I-140 Petition violates the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Compl. ¶¶ 39–45. Specifically, Mr. Gummaraju alleges that USCIS misconstrued and misapplied the legal standards set forth in *Matter of Dhanasar* and ignored extensive evidence in the administrative record that satisfies the criteria for a national interest waiver. Compl. ¶¶ 42–45. He asks that the Court reverse USCIS's decision, approve his Petition, and grant any other relief that the Court "deems just and proper." Compl. 15, Prayer for Relief.

On January 29, 2026, the Defendants moved under 28 U.S.C. § 1404 to transfer Mr. Gummaraju's lawsuit to the Eastern District of Michigan or the District of Nebraska. Mot., ECF No. 7. In the same filing, the Defendants moved to dismiss Mr. Gummaraju's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), and asked that they be given an additional 21 days after the transfer request is resolved to respond to the Complaint if it is not dismissed. *Id.*; *see also* Mot. Extension, ECF No. 8. These motions are now ripe for review. *See* Opp'n, ECF No. 9; Reply, ECF No. 10.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) is intended "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27 (1960)).

Consistent with that purpose, Section 1404(a) gives district courts "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622)).

"The threshold question under section 1404(a) is whether the action 'might have been brought' in the transferee district." *SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 114 (D.D.C. 2016). "After establishing that the threshold requirement has been met, the Court 'must balance case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness.'" *Id.* at 114–15 (quoting *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000)). The private-interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 325 (D.D.C. 2018) (quoting *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013)). The public-interest factors include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." *Id.* (quoting *Douglas*, 918 F. Supp. 2d at 31). "The burden is on the moving party to establish that transfer is proper." *Id.* (quoting *Douglas*, 918 F. Supp. 2d at 31).

## DISCUSSION

### A.    Motion to Transfer

The Defendants seek to transfer this case to either the Eastern District of Michigan or the District of Nebraska. The Court agrees that transfer to the Eastern District of Michigan is appropriate under 28 U.S.C. § 1404(a).

6

To begin, the Parties agree that Mr. Gummaraju could have brought this lawsuit in the Eastern District of Michigan or the District of Nebraska. 28 U.S.C. § 1404(a); *see* Mot. 3–4; Opp'n 5–6. A civil action against an officer or employee of the United States or an agency of the United States may be brought "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e)(1). Here, Mr. Gummaraju's residence in the Eastern District of Michigan and the physical processing of his visa petition in the District of Nebraska mean that this action could have been brought in either of those districts. *Id.* Accordingly, the Court turns to the private- and public-interest factors.

### 1.    Private-Interest Factors

*Whether the claim arose elsewhere.* The Court begins with the factor that is most in dispute: "whether there is a nexus between the underlying transactions giving rise to the claim and the forum selected." *Aishat*, 288 F. Supp. 3d at 269. "Transfer is favored when the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum." *Joslin v. U.S. Dep't of the Interior*, No. 26-cv-576, 2026 WL 686155, at *5 (D.D.C. Mar. 11, 2026) (quotation omitted). And in this Circuit in particular, courts "must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue . . . [b]y naming high government officials as defendants" and "bring[ing] a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

Here, Mr. Gummaraju does not allege a meaningful nexus between this District and USCIS's denial of his Petition. The Complaint identifies no specific "'acts or omissions' occurring in this District," nor does it allege that the named officials who reside here (the Secretary of Homeland Security and the Director of USCIS) had any direct role in adjudicating the Petition.

7

*See Aishat*, 288 F. Supp. 3d at 269 (quoting *Cameron*, 983 F.2d at 256). By contrast, Mr. Gummaraju resides in Michigan, where he was employed at the time he filed his Petition. Compl. 1, ¶ 22. And the USCIS personnel that adjudicated Mr. Gummaraju's Petition—and therefore allegedly "misconstrued and misapplied" the legal standards prescribed by *Matter of Dhanasar*, Compl. ¶¶ 42–45—work at the USCIS Service Center in Lincoln, Nebraska, *see* Request for Evidence at 1; Denial Notice at 1.

Under the circumstances, the "material events that form the factual predicate" for Mr. Gummaraju's claim appear to have occurred outside this District. *Joslin*, 2026 WL 686155, at *5. This is unsurprising given the nature of the decision being challenged. Indeed, as the Defendants point out, courts in this District routinely conclude that lawsuits challenging the denial of an immigration-related application should be litigated in either the district where the denial occurred or the district where the applicant resides. *See Bourdon v. DHS*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) ("Cases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices[.]"); *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 340 (D.D.C. 2020) (transferring case challenging visa denial to district where applicant resided).

In opposing transfer, Mr. Gummaraju characterizes his claim as one that challenges a broader "policy-level shift" in how USCIS applies the legal standards set forth in *Matter of Dhanasar*. Opp'n 4. He says that his denial, and the adjudications of other similarly situated applicants, suggest that "USCIS may have applied an undisclosed or internally modified standard inconsistent with *Dhanasar* and the agency's publicly articulated policies." *Id.* He further asserts that his Complaint "explicitly challenges USCIS's legal interpretation and nationwide application of the *Dhanasar* framework." Opp'n 9.

The problem for Mr. Gummaraju is that his Complaint says none of those things. It summarizes the standards provided by *Matter of Dhanasar* for evaluating national interest waiver eligibility. Compl. ¶¶ 5, 19–20. And it repeatedly alleges that USCIS misconstrued and misapplied them when adjudicating Mr. Gummaraju's request for a waiver. Compl. ¶¶ 42–45. But it does not more broadly challenge USCIS's application of *Matter of Dhanasar*. In fact, the only specific relief that the Complaint requests is that the Court "revers[e] USCIS's decision and approv[e] Mr. Gummaraju's I-140 petition for EB-2 classification on the basis of a national interest waiver." Compl. 15, Prayer for Relief. It does not identify or challenge "any specific USCIS policy or directive that might have caused the [Nebraska] Service Center to deny [Mr. Gummaraju's] petition." *Ike v. USCIS*, No. 20-cv-1744, 2020 WL 7360214, at *3 (D.D.C. Dec. 15, 2020).

Mr. Gummaraju's case thus differs substantially from the cases he cites "where national policy directives were central to the plaintiffs' claims." *Id.* (first citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011); and then citing *Salha v. DHS*, No. 20-cv-1102, 2020 WL 5505350, at *2 (D.D.C. Sep. 11, 2020)). In *Ravulapalli*, the court denied transfer because the plaintiffs' claims focused "primarily on the policies issued from USCIS headquarters that apply to all USCIS field offices." 773 F. Supp. 2d at 56. And in *Salha*, the court similarly declined to transfer a challenge to "policy decisions that were designed and shaped by officials at agencies in Washington, D.C. and that ha[d] allegedly caused a substantial delay in processing [the] visa application." 2020 WL 5505350, at *2. By contrast, Mr. Gummaraju's Complaint challenges a single decision made by the USCIS Service Center in Lincoln, Nebraska. Accordingly, this factor favors transfer.

*The Plaintiff's choice of forum*. "Courts ordinarily accord significant deference to a plaintiff's choice of forum, only disturbing that choice if the balance of convenience is strongly in

favor of the defendant." *SEC v. Musk*, No. 25-cv-105, 2025 WL 2803858, at *2 (D.D.C. Oct. 2, 2025) (cleaned up). But that deference is diminished where the plaintiff's chosen forum "has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 5–6 (D.D.C. 2023) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)). "Thus, the degree of deference accorded to plaintiffs' choice of forum depends on the existence of a connection between the underlying case and the district." *Musk*, 2025 WL 2803858, at *2 (cleaned up). Some courts in this District have also given less deference to a plaintiff's chosen forum when it "is not the plaintiff's home forum." *Sallyport Glob. Servs., Ltd. v. Arkel Int'l, LLC*, 78 F. Supp. 3d 369, 373 (D.D.C. 2015) (collecting cases).

Here, this District is not Mr. Gummaraju's home forum. Nor, as discussed above, is there a meaningful connection between this District and Mr. Gummaraju's claim. "Under such circumstances, [Mr. Gummaraju's] choice of forum commands diminished deference and carries little weight in the transfer analysis." *See Joslin*, 2026 WL 686155, at * 4 (cleaned up).

*The Defendant's choice of forum.* Ordinarily a defendant's forum choice is not entitled to deference. *Correll v. U.S. Pat. & Trademark Off.*, No. 25-cv-1169, 2026 WL 310024, at *3 (D.D.C. Feb. 5, 2026) (quoting *Tower Lab'ys*, 285 F. Supp. 3d at 326). But this factor can move the needle where: (1) the "defendants' preferred forum is also the plaintiff's home forum"; (2) the "plaintiff's forum choice receives little deference"; and (3) "other factors favor transfer." *See Wolfram*, 490 F. Supp. 3d at 332–33 (cleaned up). Given that all three of the above factors are present here, the Court affords "some deference" to the Defendants' preference that this matter be transferred. *See Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018).

10

*The convenience to the parties, the witnesses, and the evidence*. The Parties do not spill a great deal of ink disputing the final three private-interest factors. The Defendants' primary argument pertaining to these factors is that either the Eastern District of Michigan or the District of Nebraska are likely to be more convenient than this District because those districts are where Mr. Gummaraju's claim arose. Mot. 6–9. In response, Mr. Gummaraju notes that his claim "centers on the administrative record," which makes the location of possible witnesses or physical evidence largely irrelevant. Opp'n 11. He further contends that if there is anything missing from the administrative record, it would likely be "policy-level materials maintained by DHS and USCIS leadership" in this District. *Id.* Finally, he asserts that transfer would be inconvenient for his attorneys who are admitted in this District but not in Michigan or Nebraska. *Id.*

On the whole, the Court finds the Defendants' position more persuasive and concludes that these final three factors weigh slightly in favor of transfer. First, the Defendants are right that in the unlikely event that the case requires looking beyond the administrative record, relevant witnesses and evidence are more likely to be found in one of the districts where the claim arose. *Wolfram*, 490 F. Supp. 3d at 333 ("When claims arise within a geographic district, that district is more likely to be convenient for potential witnesses and more likely to house evidence."). Mr. Gummaraju also "cannot reasonably claim to be inconvenienced by litigating in [his] home forum"—the Eastern District of Michigan. *Aishat*, 288 F. Supp. 3d at 270 (alteration in original). And contrary to his arguments, "[t]he location of counsel is not a consideration" in assessing convenience to the parties. *Wolfram*, 490 F. Supp. 3d at 333.

### 2.    Public-Interest Factors

*The transferee's familiarity with the governing laws*. Mr. Gummaraju suggests that this District is better equipped to hear his claim because it has a "unique expertise in reviewing agency

action and adjudicating challenges to federal immigration policy." Opp'n 12. But all federal district courts are presumed to be "'equally familiar' with federal law." *Ike*, 2020 WL 7360214, at *3 (quoting *Pasem v. USCIS*, No. 20-cv-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020)). And "[t]hat principle applies even to federal administrative law cases, despite the relative concentration of such cases in this district." *Id.* This factor is neutral.

*The relative congestion of the transferor and transferee courts*. "To assess this factor, courts in this District have considered statistics including the average number of cases pending per judgeship and the median times from filing to disposition or trial." *Musk*, 2025 WL 2803858, at *6. The judiciary's most recent data shows that the average number of cases pending per judgeship in this District is 476, compared to 357 in the Eastern District of Michigan, and 517 in the District of Nebraska. *See U.S. District Courts: Combined Civil and Criminal Federal Court Management Statistics*, U.S. Courts (Mar. 31, 2026), https://www.uscourts.gov/sites/default/files/document/ fcms_na_distprofile0331.2026.pdf [https://perma.cc/5FMM-U6K6]. The median time from filing to disposition in civil matters is 7.3 months here, 8.2 months in the Eastern District of Michigan, and 5.7 months in the District of Nebraska. *Id.* Lastly, the median time from filing to trial in civil cases is 59.2 months here, compared to 39.2 months in the Eastern District of Michigan, and approximately 32.4 months in Nebraska. *Id.* Overall, this data suggests that both proposed transferee districts are slightly less congested than this District. But the statistics are mixed and thus the Court views this factor as largely neutral. *See Wolfram*, 490 F. Supp. 3d at 336 ("[W]hen statistics regarding relative congestion are mixed, this factor should be deemed as neutral[.]").

*The local interest in having local controversies decided at home*. This final public-interest factor "seeks to ensure that 'concerned members' of the population affected by a case 'can engage with the proceedings.'" *Correll*, 2026 WL 310024, at *4 (quoting *Wilderness Workshop*, 676 F.

12

Supp. 3d at 7). "To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 84 (D.D.C. 2009) (quoting *Otay Mesa Prop. L.P. v. U.S. Dep't of the Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008)).

Mr. Gummaraju's arguments largely rehash his contentions about where his claim arose, attempting to reframe his claim as "concern[ing] nationwide immigration policy" rather than his individual Petition. Opp'n 12–13. The Court has already explained why it finds these arguments unpersuasive. Moreover, the other relevant factors suggest that Mr. Gummaraju's claim is much more strongly connected to the proposed transferee districts, particularly the Eastern District of Michigan. At bottom, this case involves a visa application by a Michigan resident that would permit him to work in a specific industry for specific companies with strong ties to that state. There are thus many more "'concerned members' of the population" in Michigan who are likely to be affected by the outcome of Mr. Gummaraju's lawsuit than there are here or in Nebraska. *See Correll*, 2026 WL 310024, at *4 (quoting *Wilderness Workshop*, 676 F. Supp. 3d at 7); *see also Wolfram*, 490 F. Supp. 3d at 339 (transferring case to visa applicant's home forum where "the impacts of the outcome of the case [would] be felt most acutely"). Accordingly, the Court finds that this factor weighs heavily in favor of transfer to the Eastern District of Michigan.

### 3.    Balancing the Factors

Balancing the factors, the Court concludes that discretionary transfer to the Eastern District

13

of Michigan is warranted. *See* 28 U.S.C. § 1404(a). Each factor leans in favor of transfer to that district or is neutral. Most importantly, Mr. Gummaraju's claim is more clearly linked to that district than this one. And the resolution of his claim is more likely to impact citizens there than citizens here or in Nebraska. *See Wolfram*, 490 F. Supp. 3d at 340 (similarly concluding that factors favored transfer to visa applicant's home district rather than to the district housing the USCIS service center that denied his visa application). For all these reasons, the Court finds that transfer to the Eastern District of Michigan better serves the interest of justice. 28 U.S.C. § 1404(a).

### B.    Remaining Motions

The Defendants acknowledge that the Court need not address their dismissal motion if it finds, as it has, that transfer is appropriate. Mot. 11. Accordingly, the Court denies that motion "without prejudice so that [the] Defendants may refile it, if appropriate, upon transfer." *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *1 (D.D.C. July 23, 2007). Out of deference to the transferee court, the Court similarly denies without prejudice the Defendants' motion for an extension of time. *See Varmaa v. Bessent*, No. 24-cv-1631, 2025 WL 833194, at *3 (D.D.C. Mar. 17, 2025) (taking similar approach).

### CONCLUSION

For all these reasons, the Court grants the Defendants' Motion to Transfer, ECF No. 7, and transfers this case to the Eastern District of Michigan. The Court denies without prejudice the Defendants' Motions to Dismiss and for an Extension of Time to Respond to the Complaint. ECF Nos. 7, 8. A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    June 15, 2026

14